# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 22-753V

|  |  |
|---|---|
| MEGAN HYDUTSKY,<br><br>        Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>        Respondent. | Chief Special Master Corcoran<br><br>Filed: January 18, 2024 |

*Laura Levenberg*, Muller Brazil, LLP, Dresher, PA, for Petitioner.

*Madelyn Weeks*, U.S. Department of Justice, Washington, DC, for Respondent.

## FINDINGS OF FACT[1]

On July 11, 2022, Megan Hydutsky filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving the influenza ("flu") vaccine on November 25, 2019. Petition at 1.

A dispute has arisen between the parties regarding one of the claim's Table elements. For the reasons discussed below, I find the flu vaccine was most likely administered intramuscularly in Petitioner's left deltoid on November 25, 2019, as alleged.

---

[1] Because this Fact Ruling contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Fact Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

### I. Relevant Procedural History

Along with the petition, Petitioner filed a signed declaration and medical records, but no document directly establishing proof of vaccination. ECF No. 1. Approximately two months later, despite the issuance of a subpoena, Petitioner filed a "no records response" from the facility from which she allegedly received the vaccination in question. ECF Nos. 6, 8, 10. The notice states that "[a] search was conducted for the November 25, 2019 Vaccine Administration Record. No records have been found." Ex. 10 at 1. Petitioner filed additional medical records and a statement of completion. ECF Nos. 14, 16-17. This case was subsequently assigned to the Special Processing Unit ("SPU") in February 2023. ECF No. 18.

In July 2023, Respondent filed a status report with his informal assessment of the claim. ECF No. 25. Respondent did not identify issues beyond what is normally addressed in SPU, but described one issue that required further development of the record. *Id.* at 2. Respondent noted that none of Petitioner's filed medical records document vaccine administration. *Id.* Accordingly, Respondent requested Petitioner submit "any and all available evidence to support her claim that she received a flu vaccination on November 25, 2019." *Id.* I subsequently ordered Petitioner to file any evidence she could obtain to establish she received the flu vaccine as alleged, including but not limited to, medical records, affidavits, employment records, and/or vaccine consent forms. ECF No. 26.

Petitioner filed additional evidence supporting proof of vaccination in November 2023. ECF No. 27. Such evidence consisted of a supplemental declaration and screenshots of text messages between Petitioner and both her friend and sister from the alleged day of vaccination and the days immediately thereafter. *See id.* Petitioner then filed an amended statement of completion confirming all evidence regarding vaccine administration has been submitted. ECF No. 28.

I have determined that while this case awaits medical review, a factual ruling regarding proof of vaccination will assist in its ultimate disposition. Thus, the issue of proof of Petitioner's November 25, 2019 flu vaccination is now ripe for resolution.

### II. Issue

At issue is whether, despite the absence of a vaccine record, Petitioner received a flu vaccine intramuscularly in her left deltoid on November 25, 2019, as alleged.

### III.     Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this is not an iron-clad rule. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time but that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be

3

determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

**IV.     Findings of Fact**

I make these findings after a complete review of the record, including all medical records, affidavits, and additional evidence filed. Specifically, I highlight the following evidence:

- While not a contemporaneous medical record, screenshots of text messages between Petitioner and a friend on November 25, 2019 (the same day as the alleged vaccination), show that Petitioner stated at that time that she "was given the flu shot in [her] shoulder joint *today,* [and she is] in so much pain[.]" Ex. 14 at 1 (emphasis added).

- In her signed declaration, Petitioner alleges that she received the flu vaccine on November 25, 2019, at her place of employment – Tower Health Medical Group Orthopedic. Ex. 1.

- The day after the alleged vaccination (November 26, 2019), Petitioner presented to Dr. Joseph Albert (occupational health) stating that she "received a flu shot at work *yesterday* and within an hour developed severe pain in the left shoulder and difficulty moving the left arm. The vaccine was given in the left deltoid." Ex. 9 at 7 (emphasis added). The injury date was listed as "November 25, 2019." *Id.*

- Petitioner completed an "Employer's Report of Occupational Injury or Disease" (workers' compensation form) on November 29, 2019. Ex. 4 at 1 (noting the document was "prepared" on November 29, 2019). The date of injury was listed as "11/25/2019[,]" and the report noted that Petitioner

4

"received [a] flu vaccine [in her] left arm [and she] reports joint pain . . . ." *Id.* at 2.

- On December 3, 2019, Petitioner had a follow-up with Dr. Albert. Ex. 9 at 17. The visit notes appear to contain an exact recitation of Dr. Albert's November 26, 2019 notes – stating that Petitioner "received a flu shot at work *yesterday* and within an hour developed severe pain in the left shoulder and difficulty moving the left arm. The vaccine was given in the left deltoid." *Id.* (emphasis added). However, the injury date is listed as November 25, 2019. *Id.* Additionally, the "history of present illness" section notes that Petitioner's left shoulder pain had "been present 8 days" – since November 25, 2019. *Id.*

- Petitioner had a workers' compensation follow up visit on December 17, 2019. Ex. 4 at 5. The visit notes include the exact same language contained in Petitioner's records from November 26 and December 3, 2019. *See id.* The date of injury was listed as November 25, 2019. *Id.*

- Petitioner went to Tower Health Medical Group – Pennsylvania Hand Center, on December 20, 2019. Ex. 5 at 15. The chief complaint lists "left shoulder pain for [the] past month after receiving a flu shot on 11/18." *Id.*

- On February 21, 2020, Petitioner's workers' compensation case manager sent an email describing the history of Petitioner's injury and noting that she "reported an injury occurred on 11/18/19[, a]fter receiving her flu vaccination administered in her left arm." Ex. 4 at 9.

- Petitioner began physical therapy on June 17, 2020, noting "onset of left shoulder pain [in] November 2019 following [a] flu vaccination at work. She has consulted occupational health the day following the pain[.]" Ex. 4 at 276.

- Petitioner presented for an orthopedic surgery consultation on October 15, 2020. Ex. 3 at 52. The date of the injury was listed as "11/18/2019 . . . after a flu shot she received last year." *Id.*

- On February 19, 2021, Petitioner presented for a consultation at Pain Management Physicians. Ex. 4 at 140. The visit notes state that "[o]n 11/25/2019, she received a flu shot into her left arm above the deltoid. She felt immediate pain in the left arm and could not move her arm." *Id.*; Ex. 7 at 6.

5

- On March 4, 2021, Petitioner underwent an orthopedic evaluation. Ex. 4 at 47. Petitioner complained of "left shoulder pain that she associates to claimed injury of November 25, 2019[,] when she received a flu vaccine 'high in the left shoulder[.]'" *Id.* She states that "after she received the vaccine she had increasing pain to the point where she could not move her shoulder. This caused her to go to occupational health the next day[.]" *Id.*

- Petitioner's supplemental declaration, authored on November 14, 2023, maintains that she received the subject vaccination on November 25, 2019. Ex. 13 at 1. Petitioner attests that she "recall[s] filling out the vaccine administration consent, but [she does not] recall receiving a copy." *Id.* at 2. She explains that she "personally reached out to [a new manager] looking for a copy of this, but it can't be found." *Id.* Petitioner contends that "these records were destroyed by [another manager] as [her employer] was in the middle of getting rid of [said manager] for her unprofessional behavior." *Id.*

To prevail under the Vaccine Act a petitioner has one foundational evidentiary obligation in any claim: that he "received a vaccine set forth in the Vaccine Injury Table." Section 11(c)(1)(A). Additionally, when alleging a Table SIRVA injury as in this case, a petitioner must show he received the vaccine intramuscularly in his injured upper arm/shoulder. 42 C.F.R. § 100.3(c)(10) (2017) (Qualifications and Aids to Interpretation for a Table SIRVA).

There are many Program cases in which direct proof of vaccine administration is missing. But when presented with sufficient preponderant circumstantial evidence – such as consistent references in contemporaneously created medical records and/or credible witness testimony – special masters have found vaccination to have occurred even without a written contemporaneous record memorializing the event. *Hinton v. Sec'y of Health & Hum. Servs.,* No. 16-1140V, 2018 WL 3991001, at *10-11 (Fed. Cl. Spec. Mstr. Mar. 9, 2018); *Gambo v. Sec'y of Health & Hum. Servs.,* No. 13-0691V, 2014 WL 7739572, at *3-4 (Fed. Cl. Spec. Mstr. Dec. 18, 2014); *Lamberti v. Sec'y of Health & Hum. Servs.,* No. 99-0507V, 2007 WL 1772058, at *7 (Fed. Cl. Spec. Mstr. May 31, 2007). Of course, not every case can succeed where such direct proof is lacking; evidence has found to be insufficient in cases involving inconsistencies related to Petitioner's vaccination status and/or the events surrounding vaccination. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 19-0414V, 2021 WL 4190265, at *6-7, 9 (Fed. Cl. Spec. Mstr. Aug. 19, 2021), *aff'd,* 157 Fed. Cl. 777 (2021) (petitioner's reliance primarily on later notations of an allergic reaction).

6

In this case, the medical records are not entirely consistent as to the date of Petitioner's vaccine administration – a fact that is problematic given the absence of a vaccine administration record. While the records closest in time to the alleged vaccination record the date of vaccine administration on November 25, 2019, subsequent medical records note onset of left shoulder pain after a vaccination on November 18, 2019. *See,* e.g., Ex. 9 at 7 (a November 26, 2019 note listing onset on 11/25/2019); Ex. 4 at 1 (Petitioner's workers' compensation claim form noting onset on 11/25/2019); Ex. 5 at 15 (noting onset on 11/18/2019); Ex. 4 at 9 (stating an injury occurred on 11/18/2019); Ex. 3 at 52 (showing onset on 11/18/2019); Ex. 4 at 140 (stating onset on 11/25/2019); Ex. 4 at 47 (listing onset on 11/25/2019). Despite such inconsistences, in each instance, Petitioner reported the onset of her pain following her receipt of a flu vaccine – a factor that supports Petitioner's allegations.

While the entries contained in Petitioner's medical records regarding the date of vaccine administration are indeed inconsistent, Petitioner's records otherwise reflect a consistent course of events. For instance, the medical records show Petitioner presented to the occupational health unit at her place of employment on November 26, 2019, the day following her alleged vaccination, and stated that her pain began "yesterday" (November 25, 2019), after receiving a flu shot. Ex. 9 at 7. In Petitioner's later visits with treaters, she consistently described the same sequence of pain following a flu shot and subsequent visit with occupational health within one day of vaccination. Ex. 4 at 276 (a June 17, 2020 physical therapy record noting that Petitioner consulted with occupational health the day after her pain began and attributing such pain to a flu shot); Ex. 4 at 47 (a March 4, 2021 note showing that Petitioner reported pain on 11/25/2019, following a flu shot, and she went to occupational health the next day). These later entries corroborate Petitioner's November 26, 2019 record – thus supporting that Petitioner received the subject flu vaccination on November 25, 2019, as alleged.

And, despite the lack of a vaccine record, Petitioner's employer – from whom she received the vaccine – did not contest her workers' compensation claim, further supporting the truth of her assertion that she received the subject flu vaccination on November 25, 2019. Ex. 4 at 1 (workers' compensation claim form documenting onset on 11/25/2019, and as a result of her flu vaccination).[3] More so, Petitioner's medical records show she was referred to treatment (including physical therapy) by her employer due to her workers' compensation claim. *See,* e.g., Ex. 4 at 275. This fact supports Petitioner's allegations.

---

[3] While Petitioner's records contain a February 21, 2020 email from Petitioner's workers' compensation case manager describing the onset of Petitioner's injury after a flu vaccination on 11/18/2019, I do not find this record to outweigh Petitioner's official workers' compensation form noting onset after a flu vaccination on 11/25/2019. *Compare* Ex. 4 at 9, *with* Ex. 4 at 1.

7

In particular, it is unlikely that Petitioner's employer, Tower Health Medical Group Orthopedic, would have entertained her workers' compensation claim, sending her for treatment, without some reasonable belief that Petitioner did in fact receive an influenza vaccination in her left deltoid on the date in question. Her employer's actions, as well as the consistent reports of onset following a flu vaccination on November 25, 2019, found in contemporaneous medical records close in time to vaccination and for the purposes of obtaining medical care, support her allegations regarding the date of vaccination.

This case presents a somewhat close call regarding whether Petitioner can establish she received the subject vaccination on November 25, 2019, as alleged. Still, given all of the foregoing, I find that despite the lack of a specific vaccine record, Petitioner has provided preponderant evidence establishing that she received a flu vaccine intramuscularly in her left deltoid on November 25, 2019, as alleged.

### V.     Scheduling Order

In light of my findings regarding proof of vaccination, Petitioner should finalize a reasonable demand which she should convey, along with any needed supporting documentation, to Respondent at any time. Respondent should consider his tentative position in this case.

**Respondent shall file a status report indicating how he intends to proceed following my Ruling by no later than <u>Wednesday, February 21, 2024</u>.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master